# Matter of R-E-R-M- & J-D-R-M-, Respondents

*Decided by Attorney General September 2, 2025*

U.S. Department of Justice
Office of the Attorney General

*Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021), is overruled, and immigration judges and the Board should adhere to the holding of *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019), in all pending and future claims.

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i), I direct the Board of Immigration Appeals ("Board") to refer this case to me for my review. With the case thus referred, I hereby remand to the Board for further consideration consistent with this opinion. Furthermore, I conclude that the holding of *Matter of L-E-A-*, 27 I&N Dec. 581, 581 (A.G. 2019) ("*L-E-A- II*") should be considered precedential for pending and future claims of asylum and overrule the Attorney General's decision in *Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021) ("*L-E-A- III*") to the contrary.

The Immigration and Nationality Act ("INA") authorizes the Attorney General to grant asylum to individuals who meet several statutory requirements, including an inability to return to their home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *see* INA § 208(b)(1)(A), (B)(i), 8 U.S.C. § 1158(b)(1)(A), (B)(i). This case centers on the meaning of "membership in a particular social group," a term that has been subject to repeated and sometimes conflicting interpretation by the Board, the Attorney General, and the U.S. Courts of Appeals. *See* 27 I&N Dec. at 581, 587–92. In 2019, Attorney General Barr issued a decision explaining why under the text of the statute and Board precedent, an individual's "family-based group" qualifies as a "'particular social group' under the INA" only if the family group is "defined with sufficient particularity" and is "socially distinct in his society." *Id.* at 586. Subsequently, in *L-E-A- III*, Attorney General Garland vacated the decision "so as to return the immigration system to the preexisting state of affairs pending . . . the issuance of a final rule addressing the definition of 'particular social group.'" 28 I&N Dec. at 305; *see* Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021). No rulemaking was ever completed and the Board has not materially developed the standard since, leaving

immigration officials without the benefit of a clear standard for interpreting when clans or other kinship groups constitute "particular social groups."

The lead respondent and her minor son, natives and citizens of El Salvador, have applied for asylum and withholding of removal. The respondent claims that she faces the prospect of future harm if returned to El Salvador based on her "family/kinship ties" as well as her membership in the social group of "individuals who oppose gang membership and gang authority." *Matter of R-E-R-M- & J-D-R-M-*, at 1–2 (BIA Aug. 4, 2023) (unpublished decision). She testified that while in El Salvador, gang members demanded an extortion fee from her and threatened to kill her brother if she failed to pay. *Id.* at 2. The respondent fled to Guatemala in 2015, where she continued to receive threats. *Id.* She entered the United States in September 2015. *Id.*

The immigration judge ("IJ") denied the respondent's claim for asylum and withholding of removal, finding that she had not shown that she was a member of the group of individuals who oppose gang membership and gang authority, and that the social group of respondent's family or kinship ties was not cognizable. *Id.* The Board affirmed the IJ's finding that the respondent's family was not a discrete class of persons with definable boundaries.[1] *Id.* The respondent appealed. Without conceding error, the Government asked the court to remand the case to the Board to reconsider whether the respondent's claimed social group of "family/kinship ties" was cognizable as a "particular social group" in light of *L-E-A- III*. Respondent's Motion for Remand, *R-E-R-M- & J-D-R-M- v. Garland*, No. 23-2094 (9th Cir. Feb. 6, 2024).

Having reconsidered the case following remand from the Ninth Circuit, I conclude that *L-E-A- II* correctly interpreted the text and structure of the INA, as well as longstanding Board practice, to find that kinship ties may form the basis for a "particular social group" only where they are "'defined with particularity'" and "'socially distinct within the society in question.'" 27 I&N Dec. at 588 (quoting *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014)).[2] To be sufficiently particular, a group must have "discernible

---

[1] The respondent did not challenge on appeal the IJ's finding as to her membership in the group "individuals who oppose gang membership and gang authority," and the Board thus deemed the issue waived. *Id.*

[2] The Board also requires that a particular social group be "composed of members who share a common immutable characteristic," but as the Attorney General observed in *L-E-A- II*, "many family relationships will be immutable," and the analysis will often focus on the particularity and social distinction requirements. 27 I&N Dec. at 588, 592–93.

boundaries" and cannot be "too vague or amorphous." *Id.* at 593. To be socially distinct, "'society in general,'" rather than just the actual or potential persecutors, must "'perceive[], consider[], or recognize[] persons sharing the particular characteristic to be a group.'" *Id.* at 594 (quoting *Matter of W-G-R-*, 26 I&N Dec. 208, 217 (BIA 2014)).

Importantly, *L-E-A- III* did not conclude otherwise. It noted only that the decision in *L-E-A- II* was "inconsistent with the decisions of several courts of appeals that have recognized families as particular social groups." 28 I&N Dec. at 305. But to the extent these differing circuit court decisions "adopt[ed] a categorical rule that any nuclear family could constitute a cognizable 'particular social group,'" any such result would be "inconsistent with both the asylum laws and the long-standing precedents of the Board." 27 I&N Dec. at 591. Moreover, in issuing those decisions, "courts may have been willing . . . to accept, or assume with little analysis, the existence of a particular social group because the court went on to deny asylum on other grounds." *Id.* at 589. While *L-E-A- II* did opine that "the term 'particular social group' is ambiguous," and invoked the principles of deference established in *Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 844 (1984)—now overruled, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)—*L-E-A- II* ultimately concluded that its interpretation was the one "most faithful to the text, purpose, and policies underlying the asylum statute." 27 I&N Dec. at 591–92. It observed that a contrary rule would "render virtually every alien a member of a particular social group," a result at odds with the text and structure of the INA. *Id.* at 593. Because I agree that the analysis in *L-E-A- II* presents the "best reading" of the law, *Loper Bright*, 603 U.S. at 400, I adopt its analysis as controlling here, even though the decision also invoked the now-defunct *Chevron* framework as additional justification for its bottom-line conclusion.

*L-E-A- III* was also wrong to suggest that the issues addressed in *L-E-A- II* are best left to rulemaking. As an initial matter, the anticipated rulemaking that motivated the Attorney General's vacatur in *L-E-A- III* never occurred. Nor is rulemaking necessarily the preferable administrative process for determining whether and when families may constitute "particular social group[s]" under the INA. The meaning and scope of the statutory prerequisites to asylum are questions of law that are appropriately resolved through adjudication under the Attorney General's authority to issue "controlling" decisions "with respect to all questions of law" "relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). The rule of law put forth in *L-E-A- II* and reaffirmed here only reinforces the importance of a "fact-based inquiry to determine whether" a respondent's family group is "defined with sufficient particularity and is socially distinct

in his society." 27 I&N Dec. at 586. Adjudication presents the best method of ensuring that the facts and analysis particular to each case are carefully and fully considered. That such an inquiry is better resolved through case-by-case adjudication than broad-based rulemaking is confirmed by the failure of the previous administration to issue any rule addressing the meaning of "particular social group" over almost three years—despite a (now rescinded) Executive Order requiring that the Secretary of Homeland Security and Attorney General do so "within 270 days." Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. at 8271; *see* Exec. Order No. 14148, § 2(u), 90 Fed. Reg. 8237, 8238 (Jan. 20, 2025) (rescinding Executive Order 14010).

Accordingly, I overrule *L-E-A- III* and instruct that immigration judges and the Board should adhere to the holding of *L-E-A- II* in all pending and future cases. I therefore remand this case to the Board for further proceedings consistent with this opinion.