# Matter of Z-R-C-N-, et al., Respondents

*Decided March 18, 2026[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A respondent cannot succeed on her ineffective assistant of counsel claim where the individual she hired was not an attorney and did not hold himself out to be one.

(2) The minor respondents' eligibility for adjustment of status based on an approved special immigrant juvenile petition is speculative considering the 4-year delay in visa availability, and they have not demonstrated prima facie eligibility for relief.

FOR THE RESPONDENTS:  Marlon Bayas, Esquire, Newark, New Jersey

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Milor D. Perdomo, Associate Legal Advisor

BEFORE:  Board Panel:  MULLANE and VOLKERT, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

MULLANE, Appellate Immigration Judge:

On October 27, 2023, we dismissed the respondents' appeal.  On May 21, 2025, the respondents, natives and citizens of Ecuador, filed a motion to reopen.[2]  Both the respondent and the Department of Homeland Security ("DHS") have submitted a brief in response to our request for supplemental briefing.  We will deny the motion to reopen.

The respondent entered the United States on August 2, 2021, and was served with a notice to appear on September 9, 2021.  The respondent claims she hired Mr. Jerez and paid him $6,000 to prepare her asylum application, apply for a work permit, and represent her in removal proceedings.  The respondent states she believed Mr. Jerez was an attorney because he was known in the community as an attorney and he told the respondent he specializes in immigration.  The respondents filed asylum applications

---

[1]  The Board has designated as precedent this decision, which was previously issued unpublished on February 20, 2026.  Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  The respondents are the lead respondent and her minor daughters.  References to the respondent in the singular are to the lead respondent, unless otherwise indicated.

prepared by Mr. Jerez on May 19, 2022.  The respondent alleges that Mr. Jerez advised her not to mention any information about past harm and ongoing death threats from her ex-husband on her asylum application because he told her that domestic violence claims are not successful.  On January 18, 2023, the respondent appeared pro se at her individual hearing.  She claims that Mr. Jerez informed her he would not be able to attend due to issues with his wife's health.  The Immigration Judge denied the respondent's application for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018), and protection under the regulations implementing the Convention Against Torture.

Following the Immigration Judge's decision, the respondent claims that Mr. Jerez told her she could file an appeal, which would be granted, and she paid him $2,000 to file an appeal with the Board.  The respondent alleges that she asked Mr. Jerez about the status of her appeal, and he told her it was still pending.  On February 24, 2025, the respondent spoke to an attorney to ask about special immigrant juvenile classification for her daughters.  The attorney informed the respondent that Mr. Jerez never sent an appeal brief and her appeal was dismissed on October 27, 2023.  On March 10, 2025, the respondent retained current counsel.  The respondent, through current counsel, was granted the requisite family court orders for special immigrant juvenile classification on April 17, 2025, and filed Petitions for Amerasian, Widow(er), or Special Immigrant (Form I-360) on behalf of her daughters with United States Citizenship and Immigration Services on April 24, 2025.  The respondents indicate that these petitions were approved.

The respondent's motion to reopen alleges ineffective assistance of counsel against Mr. Jerez.  The motion to reopen, filed more than 90 days after the Board's decision, is untimely under section 240(c)(7)(C)(i) of the INA, 8 U.S.C. § 1229a(c)(7)(C)(i) (2024).  The Board entered a final administrative order in these proceedings on October 27, 2023.  The respondent argues that the Board should equitably toll the filing deadline for the motion based on ineffective assistance of counsel.  Assuming, arguendo, that ineffective assistance of counsel claims can be brought against a nonattorney, the respondent has not demonstrated that reopening is warranted on that basis.

As an initial matter, the respondent does not allege that Mr. Jerez told her that he was an attorney.  *See, e.g.*, *Jean Louis v. Att'y Gen. U.S.*, 914 F.3d 189, 191–92 (3d Cir. 2019) (holding that following the bad advice of a person the petitioner believed to be a lawyer, but who did not hold himself out as

such, does not constitute an exceptional circumstance for rescission of an in absentia removal order). Moreover, the respondent's assertion that she was unaware that Mr. Jerez was not an attorney is not supported by the record. *See Arckange Saint Ford v. Att'y Gen. U.S.*, 51 F.4th 90, 96 (3d Cir. 2022) (explaining that the facts stated in a motion to reopen "are 'accepted as true unless inherently unbelievable'" (citation omitted)). The respondent claims that she contracted Mr. Jerez to prepare the respondents' asylum applications, apply for work permits, and represent them in court, which she argues demonstrates that he held himself out as an attorney. However, the respondent filed asylum applications prepared by Mr. Jerez on May 19, 2022, but testified that same day that she did not have an attorney. The record also lacks any discussion of Mr. Jerez failing to appear at her merits hearing, as would be expected if she indicated to the Immigration Judge that she had an attorney who failed to appear. Thus, contrary to the respondent's assertion, she has not established she reasonably believed Mr. Jerez was an attorney.

Neither the respondent nor DHS argues that knowingly accepting legal assistance from a nonattorney can support an ineffective assistance of counsel claim. *See, e.g.*, *Jean Louis*, 914 F.3d at 192 (holding that a nonlawyer's bad advice does not constitute an exceptional circumstance for the purposes of rescinding an in absentia removal order); *Gunawan v. Gonzales*, 132 F. App'x 997, 1000 n.4 (3d Cir. 2005) (distinguishing between ineffective assistance of counsel claims and claims of ineffective assistant by a nonattorney who never purported to be an attorney). A respondent cannot succeed on her ineffective assistance of counsel claim where the individual she hired was not an attorney and did not hold himself out to be one.

The respondents also have not demonstrated prima facie eligibility for relief. *See Matter of Chen*, 28 I&N Dec. 676, 682 (BIA 2023) (holding that a motion to reopen for purposes of applying for relief must establish prima facie eligibility for the relief sought). The respondent asserts that she is prima facie eligible for asylum based on her feminist political opinion and her membership in the proposed particular social groups of "Ecuadorian women in a domestic relationship who are unable to leave the relationship," "Ecuadorian women who are viewed as property by virtue of their positions within a domestic relationship," and "members of Guallpa Guaman family."

The respondent has not provided prima facie evidence that the proposed groups are cognizable. "Ecuadorian women in a domestic relationship who are unable to leave the relationship" is circular and defined by the harm or threatened harm. *See Matter of A-B-*, 27 I&N Dec. 316, 335 (A.G. 2018) (explaining that "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required" to be cognizable),

*reinstated by Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025). "Ecuadorian women who are viewed as property by virtue of their positions within a domestic relationship" also lacks the requisite particularity. *See Matter of K-E-S-G-*, 29 I&N Dec. 145, 154 (BIA 2025) (holding that "Salvadoran women viewed as property" is not a cognizable particular social group because it lacks the requisite particularity). Finally, the respondent has not sufficiently demonstrated that the group defined as "members of Guallpa Guaman family" is socially distinct. *See Matter of L-E-A-*, 27 I&N Dec. 581, 589 (A.G. 2019), (explaining that "a nuclear family will not, without more, constitute a 'particular social group' because most nuclear families are not inherently socially distinct"), *reinstated by Matter of R-E-R-M- & J-D-R-M-*, 29 I&N Dec. 202 (A.G. 2025).

The respondent also does not establish that any harm was on account of her political opinion. Domestic violence perpetrated by private actors generally does not constitute harm on account of a protected ground. *See Matter of A-B-*, 27 I&N Dec. at 320. The record does not show that the respondent's ex-husband attacked her because he "was aware of, and hostile to" her political opinion. *Id*. at 339. Instead, he harmed her because of their personal relationship and his issues with alcohol. *See id.* (finding abuse was motivated by "preexisting personal relationship with the victim"). This type of private criminal conduct does not constitute harm on account of a protected ground. *See Matter of A-B-*, 28 I&N Dec. 199, 208–09 (BIA 2021) (explaining that a respondent targeted for private harm must demonstrate that a protected ground is one central reason for the decision to target him or her), *reinstated by Matter of S-S-F-M-*, 29 I&N Dec. 207. Thus, the respondent has not made a prima facie showing that any harm occurred on account of a protected ground.

We acknowledge that the minor respondents have approved visa petitions for special immigrant juvenile classification. An alien with an approved visa petition may apply for adjustment of status only when an immigrant visa is immediately available. *See* INA § 245(a), 8 U.S.C. § 1255(a) (2024); 8 C.F.R. §§ 245.1(a), 1245.1(a) (2026). Visa availability for those classified as special immigrant juveniles is governed by section 203(b)(4) of the INA, 8 U.S.C. § 1153(b)(4) (2024), which sets aside 7.1 percent of the worldwide allotment of immigrant visas annually for fourth preference employment-based immigrants, including most categories of special immigrants. *See also* Bureau of Consular Affs., U.S. Dep't of State, Visa Bulletin, Vol. XI, No. 9 (Dec. 2025), https://travel.state.gov/content/dam/visas/Bulletins /visabulletin_December2025.pdf. According to the United States Department of State's visa bulletin for December 2025, visas are currently available to aliens who filed their special immigrant juvenile visa petitions

before February 15, 2021. *See id.* at 5. The respondents' visa priority date is April 24, 2025, indicating a 4-year gap between their priority date and the current eligibility priority date. Thus, the minor respondents' eligibility for adjustment of status based on an approved special immigrant juvenile petition is speculative considering the 4-year delay in visa availability, and they have not demonstrated prima facie eligibility for relief. *See Matter of Cahuec Tzalam*, 29 I&N Dec. 300, 305 (BIA 2025) (finding that the nearly 5-year gap between the current eligibility priority date and the respondent's priority date is too remote and the ability to adjust status is too speculative to warrant administrative closure).

The respondent alternatively requests we reopen proceedings sua sponte. Sua sponte authority may be exercised to reopen in "truly exceptional situations" where the interests of justice would be served. *Matter of G-D-*, 22 I&N Dec. 1132, 1134 (BIA 1999). This sua sponte authority "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." *Matter of J-J-*, 21 I&N Dec. 976, 984 (BIA 1997). The respondent has the burden of demonstrating truly exceptional circumstances and must show "a substantial likelihood that the result in his case would be changed if reopening is granted." *Matter of Beckford*, 22 I&N Dec. 1216, 1219 (BIA 2000). We conclude that the record before us does not present an exceptional situation that warrants the exercise of our sua sponte reopening authority in these proceedings.

**ORDER:** The motion to reopen is denied.

**FURTHER ORDER:** The stay of removal is vacated.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).