# Matter of Miguel Angel Otoniel CAHUEC TZALAM, Respondent

*Decided November 14, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Given the respondent's failure to submit evidence of his prima facie eligibility for special immigrant juvenile classification and the extended delay in the availability of a visa, the Immigration Judge erred in granting administrative closure.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Maria I. Flores, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, Chief Appellate Immigration Judge; HUNSUCKER and VOLKERT, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's June 20, 2025, decision administratively closing the respondent's removal proceedings based on a pending visa petition for special immigrant juvenile classification.  The respondent has not filed a response in opposition to the appeal.[1]  The appeal will be sustained, these removal proceedings will be reinstated, and the record will be remanded.

The Board does not usually entertain interlocutory appeals.  *See Matter of M-D-*, 24 I&N Dec. 138, 139 (BIA 2007).  However, we deem it appropriate to exercise jurisdiction over this interlocutory appeal "to insure proper use of the administrative closing procedure."  *Matter of Amico*, 19 I&N Dec. 652, 653 (BIA 1988); *see also Matter of W-Y-U-*, 27 I&N Dec. 17, 17 n.21 (BIA 2017) (considering an interlocutory appeal of a denial of a motion to recalendar because it "raises an important question regarding the administration of proceedings under our immigration laws" (citation omitted)).

---

[1]  The respondent was represented by counsel before the Immigration Judge.  After DHS filed its notice of appeal, we requested supplemental briefing from the parties.  DHS filed a supplemental brief.  The respondent did not file a brief or otherwise respond to our briefing request.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is an 18-year-old native and citizen of Guatemala.  He entered the United States without inspection on December 23, 2023, when he was 16 years old.  He was served with a notice to appear for removal proceedings.  On April 23, 2025, he filed a visa petition for special immigrant juvenile classification under section 101(a)(27)(J) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(27)(J), with United States Citizenship and Immigration Services ("USCIS").  He filed a copy of the receipt notice for his special immigrant juvenile petition with the Immigration Judge and later filed a motion to administratively close his removal proceedings to await USCIS' adjudication of his petition.  The Immigration Judge granted the respondent's motion over DHS' objection. The present appeal followed.

## II.  DISCUSSION

The sole issue on appeal is whether it was appropriate for the Immigration Judge to administratively close the respondent's removal proceedings to await the adjudication of his special immigrant juvenile petition pending before USCIS.  We review this issue de novo.  *See Matter of B-N-K-*, 29 I&N Dec. 97, 98 (BIA 2025); 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

### A. Administrative Closure

"Administrative closure is intended to be a docket management tool 'used to temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket.'" *Matter of B-N-K-*, 29 I&N Dec. at 97 (citation omitted).  It "is not a form of relief from removal and does not provide an alien with any immigration status." *Matter of W-Y-U-*, 27 I&N Dec. 17, 18 (BIA 2017).  In determining whether administrative closure of a case over the objection of a party is appropriate, the Immigration Judge should consider a nonexhaustive list of regulatory factors, including:

> (A) The reason administrative closure is sought;
> (B) The basis for any opposition to administrative closure;
> (C) Any requirement that a case be administratively closed in order for a petition, application, or other action to be filed with, or granted by, DHS;
> (D) The likelihood the [alien] will succeed on any petition, application, or other action that the [alien] is pursuing, or that the [alien] states in writing or on the record at a hearing that they plan to pursue, outside of proceedings before the immigration judge;
> (E) The anticipated duration of the administrative closure;
> (F) The responsibility of either party, if any, in contributing to any current or anticipated delay;

      (G) The ultimate anticipated outcome of the case pending before the immigration judge; and
      (H) The ICE detention status of the [alien].

8 C.F.R. § 1003.18(c)(3)(i) (2025); *accord* 8 C.F.R. § 1003.1(l)(3)(i) (2025). The regulations codified and expanded upon the factors listed in *Matter of Avetisyan*, 25 I&N Dec. 688, 696 (BIA 2012), and thus *Matter of Avetisyan* has been superseded by the regulations.[2]

    In assessing whether administrative closure is warranted, adjudicators must consider the relevant factors "in the totality" and are not required to give "each factor equal importance." *Matter of B-N-K-*, 29 I&N Dec. at 99; *see also* 8 C.F.R. §§ 1003.1(l)(3), 1003.18(c)(3) (requiring that adjudicators consider the totality of the circumstances). Although "no one factor is dispositive," "whether there are persuasive reasons for a case to proceed and be resolved on the merits is the primary consideration in determining whether administrative closure is appropriate under the totality of the circumstances." *Matter of B-N-K-*, 29 I&N Dec. at 99–100.

    When a request for administrative closure is based on the pendency of a collateral matter, there must be "some foreseeable resolution to the ongoing proceedings within a reasonably short period of time." *Id*. at 99. This serves

---

[2]  *Matter of Avetisyan*, 25 I&N Dec. at 696, overruled the long-standing requirement that both parties must agree before a case may be administratively closed and provided minimal explanation for such a fundamental change to well-established immigration procedures. The decision created a vague standard for administrative closure with competing factors for Immigration Judges to apply on a case-by-case basis. This has resulted in an inconsistent application of the standard and a massive increase in the number and length of time that cases are administratively closed. Since the Board issued *Matter of Avetisyan* in 2012, the average increase in the number of administratively closed cases per year has more than quadrupled from about 3,400 cases per year between 1999 and 2012 to an average of about 15,000 cases per year in the years since 2012. *See* Exec. Off. for Immigr. Rev., Adjudication Statistics, Administratively Closed Cases (July 31, 2025), https://www.justice.gov/eoir/media/1389711/dl?inline. The median length of time a case is administratively closed is now over 4,000 days. *Id*. *Matter of Avetisyan*, 25 I&N Dec. at 694, states that administrative closure "does not preclude the DHS from . . . pursuing . . . proceedings and so does not infringe on the DHS's prosecutorial discretion." However, the application of administrative closure since *Matter of Avetisyan* with many cases being closed for a seemingly endless period of time raises serious questions about the accuracy of this statement today and whether administrative closure is in practice being "utilized to delay proceedings indefinitely" rather than being "limited to a temporary period." *Matter of B-N-K-*, 29 I&N Dec. at 99. If so, then the application of administrative closure could raise serious legal issues as an infringement on DHS' legal authority and ability to enforce the immigration laws. The parties are free to further address this legal tension on remand if they deem it warranted.

the "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *INS v. Abudu*, 485 U.S. 94, 107 (1988). Thus, it is not appropriate to administratively close removal proceedings indefinitely. *Matter of B-N-K-*, 29 I&N Dec. at 99.

## B. Special Immigrant Juvenile Classification

The Immigration Judge granted the respondent administrative closure to await USCIS' adjudication of his pending visa petition for special immigrant juvenile classification. The INA creates an immigrant visa classification for an alien present in the United States

> [(1)] who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [and (2)] for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence.

INA § 101(a)(27)(J)(i)–(ii), 8 U.S.C. § 1101(a)(27)(J)(i)–(ii).

To obtain special immigrant juvenile classification, an alien must be unmarried and under 21 years old at the time of the filing of the petition, physically present in the United States, and subject to a juvenile court order. 8 C.F.R. § 204.11(b) (2025). The order must be issued by "a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." 8 C.F.R. § 204.11(a); *see also* 8 C.F.R. § 204.11(b)(4), (d)(3). The court order must either "[d]eclare[] the petitioner dependent upon the juvenile court" or "[l]egally commit[] to or place[] the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court." 8 C.F.R. § 204.11(c)(1)(i). Additionally, the court order must make "a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law." 8 C.F.R. § 204.11(c)(1)(ii). Finally, the order must reflect that a determination was made "that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence." 8 C.F.R. § 204.11(c)(2)(i).

An alien seeking special immigrant juvenile classification must file a Petition for Amerasian, Widow(er), or Special Immigrant (Form I-360) with USCIS, along with the juvenile court order and other required documentary evidence. *See* 8 C.F.R. § 204.11(d); USCIS, I-360, Petition for Amerasian, Widow(er), or Special Immigrant, https://www.uscis.gov/i-360 (last updated Sept. 26, 2025). If the alien's petition is approved by USCIS, he or she may then apply for adjustment of status to lawful permanent residence in the United States but only when an immigrant visa is immediately available. *See* INA § 245(a), 8 U.S.C. § 1255(a) (2018); 8 C.F.R. §§ 245.1(a), 1245.1(a) (2025). An alien with an approved special immigrant juvenile visa petition is deemed to have been paroled into the United States and is not subject to many grounds of inadmissibility contained in section 212(a) of the INA, 8 U.S.C. § 1182(a) (2018), for purposes of adjustment of status. INA § 245(h), 8 U.S.C. § 1255(h).

Visa availability for aliens classified as special immigrant juveniles is governed by section 203(b)(4) of the INA, 8 U.S.C. § 1153(b)(4) (2018), which sets aside 7.1% of the worldwide allotment of immigrant visas annually for fourth preference employment-based immigrants, including most categories of special immigrants. *See* Bureau of Consular Affs., U.S. Dep't of State, Visa Bulletin, Vol. XI, No. 7 (Oct. 2025), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-october-2025.html. According to the United States Department of State's visa bulletin, visas are currently available to aliens who filed their visa petition before July 1, 2020. *See id.*

## C. Application to the Respondent

The only evidence submitted by the respondent in support of his request for administrative closure is a receipt notice from USCIS showing that he filed a petition for special immigrant juvenile classification. The respondent did not present any other evidence demonstrating his prima facie eligibility. Submitting the juvenile court order is particularly important to establishing prima facie eligibility because we otherwise have no way of knowing whether the respondent is subject to a juvenile court order that satisfies the regulatory requirements at 8 C.F.R. § 204.11(c)(1) and (d)(3) and whether a competent court or agency made the best-interest determination required by 8 C.F.R. § 204.11(c)(2)(i). For these reasons, the respondent has not established a likelihood that he would prevail on his pending special immigrant juvenile petition. *See* 8 C.F.R. § 1003.18(c)(3)(i)(D). The absence of evidence demonstrating prima facie eligibility for the collateral benefit sought strongly militates against a grant of administrative closure.

Moreover, even if the respondent had established eligibility for special immigrant juvenile classification, the indeterminate and likely lengthy period of time until he would be eligible to adjust status if his petition were ultimately approved by USCIS also strongly militates against administrative closure.[3]  The priority date for the respondent's visa petition is April 23, 2025.  As explained above, visas for special immigrant juveniles are only currently available to aliens who filed their petitions prior to July 1, 2020. Considering the extensive, nearly 5-year gap between the currently eligible priority date and the respondent's priority date, it is not realistic to expect the respondent to become eligible for relief from removal based on his special immigrant juvenile petition within a "reasonably short period of time." *Matter of B-N-K-*, 29 I&N Dec. at 99.  Thus, we conclude that administrative closure based on the respondent's potential eligibility for adjustment of status at some remote time in the future is inappropriate.  *See Matter of Gomez-Beltran*, 26 I&N Dec. 765, 771–72 (BIA 2016) ("[A]dministrative closure would not have been warranted because of the remote availability of a visa and the speculative nature of the respondent's ability to adjust his status . . . ."); *cf. Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982) ("[T]he fact that the respondent has an approved visa petition does not entitle him to delay the completion of deportation proceedings pending availability of a visa number.").

DHS opposes administrative closure based on its interest in expeditiously bringing the respondent's removal proceedings to a close.  *See Matter of W-Y-U-*, 27 I&N Dec. at 19–20 (concluding that the "important public interest in the finality of immigration proceedings" and a party's desire for a "case [to] proceed to a conclusion on the merits" were persuasive reasons for denying administrative closure).  We find the reason for DHS' opposition persuasive.  Given the respondent's failure to submit evidence of his prima facie eligibility for special immigrant juvenile classification and the extended delay in the availability of a visa, the Immigration Judge erred in granting administrative closure.

---

[3]   Being classified as a special immigrant juvenile by USCIS would not by itself confer any lawful status on the respondent or affect his removability.  *See Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085–86 (9th Cir. 2025) (holding that special immigrant juvenile classification does not constitute an "admission" under the INA); *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023) (holding that "the plain language [of INA § 245(h)] demonstrates that" an alien with an approved special immigrant juvenile petition "is removable [for being present without admission or parole] despite his" special immigrant juvenile classification).

**ORDER:**  The appeal is sustained, the Immigration Judge's June 20, 2025, decision is vacated, and these removal proceedings are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.